IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

IN RE: COLOPLAST CORP.
PELVIC SUPPORT SYSTEM
PRODUCTS LIABILITY LITIGATION  MDL No. 2387

---

THIS DOCUMENT RELATES TO:

*Cordelia P. Lopez v. Mentor Worldwide LLC, et al.*    Civil Action No. 2:13-cv-09909

MEMORANDUM OPINION & ORDER

Pending before the court is Defendant's Motion to Dismiss for Failure to Prosecute [ECF No. 16] filed by Mentor Worldwide LLC ("Mentor"). The plaintiff has not responded, and the deadline for responding has expired. Thus, this matter is ripe for my review. For the reasons stated below, Mentor's Motion is **DENIED**.

I.  Background

The case resides in one of seven MDLs assigned to me by the Judicial Panel on Multidistrict Litigation concerning the use of transvaginal surgical mesh to treat pelvic organ prolapse and stress urinary incontinence. In the seven MDLs, there are nearly 25,000 cases currently pending, approximately 150 of which are in the Coloplast MDL, MDL 2387.

In an effort to efficiently and effectively manage this MDL, the court decided to conduct pretrial discovery and motions practice on an individualized basis so that once a case is trial-ready (that is, after the court has ruled on all summary judgment motions, among other things), it can then be promptly transferred or remanded to the

appropriate district for trial. To this end, the court placed this and other cases in Coloplast Wave 3. Pretrial Order ("PTO") # 123, at 10 [ECF No. 7].

Managing multidistrict litigation requires the court to streamline certain litigation procedures in order to improve efficiency for the parties and the court. Some of these management techniques simplify the parties' discovery responsibilities. For example, PTO # 126 required all plaintiffs in Wave 3 cases to submit their expert disclosures by August 4, 2017. PTO # 126, at 1 [ECF No. 8]. PTO # 132 required plaintiffs to submit specific causation expert disclosures by September 5, 2017, and set the close-of-discovery deadline for November 4, 2017. The plaintiff failed to comply with each of these deadlines. On this basis, Mentor now seeks dismissal with prejudice.

## II. Legal Standard

Federal Rule of Civil Procedure 37(b)(2) allows a court to sanction a party for failing to comply with discovery orders. *See* Fed. R. Civ. P. 37(b)(2) (stating that a court "may issue further just orders" when a party "fails to obey an order to provide or permit discovery"). Before levying a harsh sanction under Rule 37, such as dismissal or default, a court must first consider the following four factors identified by the Fourth Circuit Court of Appeals:

> (1) Whether the noncomplying party acted in bad faith; (2) the amount of prejudice his noncompliance caused his adversary, which necessarily includes an inquiry into the materiality of the evidence he failed to produce; (3) the need for deterrence of the particular sort of noncompliance; and (4) the effectiveness of less drastic sanctions.

2

*Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs., Inc.*, 872 F.2d 88, 92 (4th Cir. 1989) (citing *Wilson v. Volkswagen of Am., Inc.*, 561 F.2d 494, 503–06 (4th Cir. 1977)).

In applying these factors to the case at bar, I must be particularly cognizant of the realities of multidistrict litigation and the unique problems an MDL judge faces. Specifically, when handling seven MDLs, containing thousands of individual cases in the aggregate, case management becomes of utmost importance. *See In re Phenylpropanolamine Prods. Liab. Litig.*, 460 F.3d 1217, 1231 (9th Cir. 2006) (emphasizing the "enormous" task of an MDL court in "figur[ing] out a way to move thousands of cases toward resolution on the merits while at the same time respecting their individuality"). I must define rules for discovery and then strictly adhere to those rules, with the purpose of ensuring that pretrial litigation flows as smoothly and efficiently as possible. *See id.* at 1232 ("[T]he district judge must establish schedules with firm cutoff dates if the coordinated cases are to move in a diligent fashion toward resolution by motion, settlement, or trial."); *see also* Fed. R. Civ. P. 1 (stating that the Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding").

In turn, counsel must collaborate with the court "in fashioning workable programmatic procedures" and cooperate with these procedures thereafter. *In re Phenylpropanolamine*, 460 F.3d at 1231–32. Pretrial orders—and the parties' compliance with those orders and the deadlines set forth therein—"are the engine that drives disposition on the merits." *Id.* at 1232. And a "willingness to resort to

sanctions" in the event of noncompliance can ensure that the engine remains in tune, resulting in better administration of the vehicle of multidistrict litigation. *Id.*; *see also Freeman v. Wyeth*, 764 F.3d 806, 810 (8th Cir. 2014) ("The MDL judge must be given 'greater discretion' to create and enforce deadlines in order to administrate the litigation effectively. This necessarily includes the power to dismiss cases where litigants do not follow the court's orders.").

III. Discussion

Pursuant to PTO # 126, all plaintiffs in Wave 3 cases were required to submit their expert disclosures by August 4, 2017. PTO # 126, at 1. PTO # 132 required plaintiffs to submit specific causation expert disclosures by September 5, 2017, and set the close-of-discovery deadline for November 4, 2017. According to Mentor, the plaintiff failed to submit her expert disclosures and failed to respond to requests for written discovery. Additionally, "Mentor attempted to contact Plaintiff at least seven times to set a date for Plaintiff's deposition, but received no proposed dates from Plaintiff's counsel in response to any of these inquiries." Mem. Supp. Def.'s Mot. to Dismiss 1 [ECF No. 17]. As of the date of filing its Motion, plaintiff's counsel still had not responded to Mentor's requests for proposed dates. Plaintiff's counsel has not responded to the Motion to Dismiss.

Applying the *Wilson* factors to these facts and bearing in mind the unique context of multidistrict litigation, I conclude that although recourse under Rule 37 is justified, the plaintiff should be afforded one more chance to comply with discovery before further sanctions are imposed.

4

The first factor, bad faith, is difficult to ascertain, given that the plaintiff has not responded. This indicates a failing on the part of the plaintiff, who has an obligation to provide counsel with any information needed to prosecute her case. *See Link v. Wabash R.R. Co.*, 370 U.S. 626, 634 n.10 (1962) ("[A] civil plaintiff may be deprived of his claim if he failed to see to it that his lawyer acted with dispatch in the prosecution of his lawsuit."). Furthermore, as set forth in PTO # 2, "[a]ll attorneys representing parties to this litigation . . . bear the responsibility to represent their individual client or clients." PTO # 2, at ¶ E [ECF No. 10], *In re Coloplast Corp., Pelvic Support Sys. Prods. Liab. Litig.*, No. 2:12-md-02387. This includes awareness of and good faith attempts at compliance with all PTOs and other court orders. The plaintiff nevertheless failed to comply with PTOs 126 and 132. Although these failures do not appear to be callous, the fact that they were blatant and in full knowledge of the court's orders and discovery deadlines leads me to weigh the first factor against the plaintiff. *See In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 496 F.3d 863, 867 (8th Cir. 2007) ("While not contumacious, perhaps, this is a blatant disregard for the deadlines and procedure imposed by the court, [and t]herefore, we conclude that the [plaintiffs] did not act in good faith.").

The second factor—prejudice caused by noncompliance—also leans toward the order of sanctions. The purpose of depositions and orderly pretrial discovery in general is to permit the parties and the court to resolve matters in a just, speedy, and inexpensive manner. By depriving Mentor of the plaintiff's deposition testimony, the plaintiff is depriving Mentor of the information it needs to mount its defense.

5

Furthermore, because Mentor has had to divert attention away from responsive plaintiffs and onto this case, the delay has unfairly impacted the progress of the remaining plaintiffs in MDL 2387.

The adverse effect on the management of the MDL as a whole segues to the third factor, the need to deter this sort of noncompliance. When parties fail to comply with deadlines provided in pretrial orders, a domino effect develops, resulting in the disruption of other MDL cases. This cumbersome pattern goes against the purpose of MDL procedure, and I must deter any behavior that would allow it to continue. *See* H.R. Rep. No. 90-1130, at 1 (1967), *reprinted in* 1968 U.S.C.C.A.N. 1898, 1901 (stating that the purpose of establishing MDLs is to "assure the uniform and expeditious treatment" of the included cases).

Application of the first three factors demonstrates that this court is justified in sanctioning the plaintiff. However, application of the fourth factor—the effectiveness of less drastic sanctions—counsels against the relief sought by Mentor. Rather than imposing harsh sanctions at this time, the court opts for a lesser sanction and allows the plaintiff one more chance to comply, subject to dismissal upon motion by the defendant, if she fails to do so.

Alternative lesser sanctions, such as the ones proposed in Rule 37(b)(2)(i)–(iv), are simply impracticable, and therefore ineffective, in the context of an MDL containing approximately 150 cases. The court cannot spare its already limited resources enforcing and monitoring sanctions that are qualified by the individual circumstances of each case, nor would it be fair for the court to place this

responsibility on defendants. Therefore, considering the administrative and economic realities of multidistrict litigation, I conclude that affording the plaintiff a final chance to comply with discovery, subject to dismissal if she fails to do so, is a "just order" under Rule 37 and in line with the Federal Rules of Civil Procedure as a whole. *See* Fed. R. Civ. P. 1 (stating that the Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding").

IV. Conclusion

It is **ORDERED** that Defendant's Motion to Dismiss for Failure to Prosecute [ECF No. 16] is **DENIED** without prejudice. It is further **ORDERED** that the plaintiff must serve her expert disclosures, respond to Mentor's requests for written discovery, and make herself available for a deposition on or before **January 22, 2018**. Failure to comply with this Order may result in dismissal with prejudice upon motion by the defendants. Finally, it is **ORDERED** that plaintiff's counsel send a copy of this Order to the plaintiff via certified mail, return receipt requested, and file a copy of the receipt.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: December 22, 2017

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE